UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Christopher C. Fuller,                                  File No. 24-cv-279 (ECT/DJF)

       Plaintiff,

v.                                                                    **OPINION AND ORDER**

Honeywell International, Inc.,

       Defendant.

---

Charles Goldstein, Advocate at Work, Minneapolis, MN, for Plaintiff Christopher C. Fuller.

Joseph G. Schmitt and Claire Pritchard-Gutknecht, Nilan Johnson Lewis PA, Minneapolis, MN, and Michael S. Burkhardt, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendant Honeywell International, Inc.

---

Plaintiff Christopher Fuller worked for Defendant Honeywell International as an engineer. Beginning in July 2022, Mr. Fuller reported to various federal officials that Honeywell was developing weapons-related technology in ways that evaded federal oversight and compromised the United States' national defense. In this case, Mr. Fuller alleges that Honeywell retaliated against him because of his reporting activities. Mr. Fuller claims that Honeywell's retaliatory actions violated the Minnesota Whistleblower Act and caused him to be constructively discharged.

Honeywell has moved to dismiss Mr. Fuller's Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted. The Complaint does not allege facts

plausibly showing either that Mr. Fuller reported a violation of law or that Honeywell took adverse action against Mr. Fuller because of his reporting activities. And constructive discharge is not a freestanding cause of action. Because Mr. Fuller's claim might conceivably be repleaded with success, he will be given the opportunity to file an amended complaint. If Mr. Fuller chooses not to pursue that course, the Complaint will be dismissed with prejudice, and judgment will be entered.[1]

I[2]

Mr. Fuller had "serious concerns" regarding Honeywell's development and intended use of technology. Compl. ¶ 5. The Complaint's descriptions of this technology and Mr. Fuller's concerns are somewhat vague. The Complaint describes the technology as "dangerous, high-index technology" that might have weapons-related applications. Compl. ¶¶ 6, 9. According to the Complaint, Mr. Fuller was concerned that Honeywell had misrepresented the technology's "stage of development" to prevent the federal government from monitoring Honeywell. *Id.* ¶ 7. This, in turn, raised a risk the technology

---

[1]    Mr. Fuller brought this case originally in Minnesota state court; Honeywell removed it to federal court based on diversity jurisdiction. *See* ECF No. 1. After Honeywell filed its Rule 12(b)(6) motion, Mr. Fuller moved to remand the case back to Minnesota state court. ECF No. 16. Mr. Fuller's remand motion was denied for reasons explained during the hearing. ECF No. 27 at 2–5. To be clear, the record establishes that Mr. Fuller is a Minnesota citizen. Compl. [ECF No. 1-1] ¶ 1. Honeywell submitted evidence showing it to be a citizen of Delaware and North Carolina. *See generally* ECF No. 24; 28 U.S.C. § 1332(c)(1). And the Complaint makes clear that the amount in controversy exceeds the sum of $75,000. In other words, there is enough to find subject-matter jurisdiction's presence at this stage under the general diversity statute, 28 U.S.C. § 1332(a)(1).

[2]    In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn entirely from the Complaint. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

might be "promulgated to foreign governments and other entities" and used by them in ways that might be detrimental to the United States and its national defense. *Id.* ¶ 9.

During 2022 and 2023, Mr. Fuller contacted several federal officials regarding his concerns. Mr. Fuller claims he began contacting federal officials "starting on July 26, 2022," though the Complaint does not identify whom Mr. Fuller contacted on that date. *Id.* ¶ 5. In January 2023, Mr. Fuller contacted Dean Phillips, Minnesota's Third Congressional District representative. *Id.* After Mr. Fuller communicated with a member of Mr. Phillips's staff, "a State Department inquiry began." *Id.* In February 2023, Mr. Fuller reported his concerns to an agent with the Federal Bureau of Investigation. *Id.* ¶ 6. In March 2023, Mr. Fuller participated in an "online TEAMS meeting" with various federal officials, including a member of Mr. Phillips's staff, "State Department investigators, and Bureau of Industry and Security investigators." *Id.* ¶ 8. Mr. Fuller continued to communicate with these investigators and a Department of Homeland Security investigator after this meeting. *Id.*

Beginning in August 2023, Mr. Fuller experienced several unfavorable employment-related events. That month, he received "an overall negative performance review, in contrast to all other performance reviews done by previous managers since 2020." *Id.* ¶ 10.[3] In September 2023, Honeywell investigated Mr. Fuller for exceeding his authority "by contacting a vendor." *Id.* ¶ 12. Around that same time, Honeywell

---

[3]     Recall that Mr. Fuller's employment began in April 2017. Compl. ¶ 4. It doesn't matter, but Mr. Fuller's allegation that his August 2023 review was his first negative review "since 2020," *id.* ¶ 10, leaves open the inference that he received negative reviews between 2017 and 2020.

investigated Mr. Fuller for downloading Honeywell data to a personal device. *See id.* ¶ 11.

Mr. Fuller claims both investigations were pretextual; he claims to have contacted the

vendor "multiple times" before at another employee's request, and Mr. Fuller claims he

downloaded Honeywell data to his personal device with his manager's knowledge. *See id.*

¶¶ 11, 12.  Regardless, Honeywell placed Mr. Fuller on a performance improvement plan

(or "PIP") and "stripped Mr. Fuller of his related clearance authority following these

circumstances." *Id.* ¶¶ 13, 14.  In October 2023, after reporting another employee's data

misuse to his superiors, Mr. Fuller's "authority to identify controlled data was revoked."

*Id.* ¶ 14.  On December 1, 2023, Honeywell placed Mr. Fuller on administrative leave; this

decision occurred in connection with Honeywell's investigation of Mr. Fuller for

downloading Honeywell data to his personal device. *Id.* ¶ 15; *see id.* ¶ 16.

Mr. Fuller resigned his Honeywell employment effective January 1, 2024. *Id.* ¶ 18.

Mr. Fuller alleges his resignation was "due to untenable working conditions" Honeywell

created in retaliation for Mr. Fuller's reports to federal officials regarding Honeywell's

activities. *Id.* ¶ 18.  Mr. Fuller also claims he is owed a $175,000 bonus payment that

Honeywell has withheld in retaliation for his communications with federal officials.

*Id.* ¶ 17.

## II

The standards governing the adjudication of Honeywell's Rule 12(b)(6) motion are

familiar.  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6),

a court must accept as true all the factual allegations in the complaint and draw all

reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792

(8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*[4]

Begin with Mr. Fuller's claim under the Minnesota Whistleblower Act, Minn. Stat. §§ 181.931–.935 (2023).  Under the Act, "[a]n employer shall not discharge, discipline, penalize, interfere with, threaten, restrain, coerce, or otherwise retaliate or discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because . . . the employee . . . in good faith, reports a violation, suspected violation, or planned violation of any federal or state law . . . to an employer or

---

[4]     In addition to a memorandum of law, Mr. Fuller filed a lengthy affidavit and exhibits in opposition to Honeywell's motion.  *See* ECF Nos. 14 (affidavit) and 14-1 (exhibits).  The law governing Rule 12(b)(6) motions forbids consideration of these materials.  A Rule 12(b)(6) motion tests the sufficiency of a pleading—here, the Complaint's allegations.  *See Twombly*, 550 U.S. at 555–56.  A plaintiff opposing a Rule 12(b)(6) motion has two options.  He may amend the complaint as of right.  Fed. R. Civ. P. 15(a)(1)(B).  Or he may defend the pleading as written.  A party cannot, however, defend a complaint by relying on a brief or affidavit that describes additional or different allegations that are not in the complaint.  *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *see also In re Agape*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and such facts are thus irrelevant for purposes of determining whether [the Plaintiff's] [c]omplaint should be dismissed for failure to state a claim." (cleaned up)).

to any governmental body or law enforcement official."  Minn. Stat. § 181.932, subdivs. 1, 1(1).  The same non-retaliation rules apply to an employee who "is requested by a public body or office to participate in an investigation, hearing, [or] inquiry."  *Id.* subdiv. 1(2).  The Act defines the term "penalize" broadly to mean "conduct that might dissuade a reasonable employee from making or supporting a report[.]" Minn. Stat. § 181.931, subdiv. 5.[5]  "'Report' means a verbal, written, or electronic communication by an employee about an actual, suspected, or planned violation of a statute, regulation, or common law, whether committed by an employer or a third party."  *Id.* subdiv. 6.  By its text, then, the Act requires a plaintiff to allege facts plausibly showing three elements: (1) that he engaged in reporting or other conduct the Act protects; (2) that the employer took an action prohibited by the Act (for example, by penalizing the employee regarding the employee's employment conditions or terms); and (3) that the employee's protected conduct caused the employer to take prohibited action.  Minn. Stat. § 181.932, subdiv. 1.

Here, the Complaint does not allege facts plausibly showing the first or third elements.  Regarding the first element, though the Complaint alleges that Mr. Fuller "report[ed] a violation of federal and state law," Compl. ¶ 21, the Complaint nowhere identifies a federal or state law on which Mr. Fuller might have based his reports, *see*

---

[5]      The Minnesota Court of Appeals has explained that the Act's definition of "penalize" "suggest[s] an inclusive reach into a wide variety of unspecified employer behavior."  *Moore v. City of New Brighton*, 932 N.W.2d 317, 325 (Minn. Ct. App. 2019). "Nothing on the face of the definition categorically excludes as actionable conduct an employer's decision to investigate an employee and remove him from active service by placing him on extensive administrative leave."  *Id.*; *see Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 767 F.3d 744, 749 (8th Cir. 2014) (applying the "likely dissuade" standard to a claim brought under the Act).

*generally id.* It is true that the Complaint describes the subject of Mr. Fuller's reports in grave terms. The Complaint characterizes Mr. Fuller's "concerns" as "serious" and "public safety" related. *Id.* ¶ 5. And the Complaint describes the technology that was the subject of Mr. Fuller's reports as "dangerous," "highly sophisticated," weapons-related, and capable of posing a threat to national defense. *See id.* ¶¶ 6, 7, 9. But stating a claim under the Act requires Mr. Fuller to show that he reported an actual, suspected, or planned violation "of any federal or state law." Minn. Stat. 181.932, subdiv. 1(1). The Complaint alleges no connection between the substance of Mr. Fuller's reports and any federal or state law. Regarding the third element, the Complaint alleges no causal connection between Mr. Fuller's reporting and Honeywell's prohibited actions. The Complaint does not allege, for example, that anyone at Honeywell—much more the Honeywell employees who engaged in prohibited actions—knew of Mr. Fuller's reporting before prohibited actions occurred. Nor does the Complaint allege facts that might plausibly allow that inference.[6] For these reasons, the Complaint does not plausibly allege a Minnesota Whistleblower Act claim.

Turn next to the Complaint's allegation that Mr. Fuller was constructively discharged. The Complaint's formatting implies that constructive termination is meant to be alleged as a freestanding claim. *See* Compl. ¶¶ 22–23 (following heading titled

---

[6]     There is another causation-related problem. The Complaint alleges that Mr. Fuller first reported his concerns to federal officials in July 2022. Compl. ¶ 5. The first prohibited action the Complaint identifies occurred in late August 2023, or roughly thirteen months later. *Id.* ¶ 10. That gap is too long to plausibly infer causation based on a temporal proximity between the protected activity and the prohibited action. *See Lissick v. Andersen Corp.*, 996 F.3d 876, 883–84 (8th Cir. 2021) (finding four-month gap between alleged whistleblowing and termination insufficient to support inference of causation).

"**Constructive Termination**").   If this understanding is correct, the claim must be dismissed.   "The law does not recognize such a claim.   Firing an employee, whether actually or constructively, is not unlawful unless a contract or statute makes it so." *Darke v. Lurie Besikof Lapidus & Co.*, 550 F. Supp. 2d 1032, 1037 n.2 (D. Minn. 2008); *see Cook v. Domino's Pizza, L.L.C.*, No. 01-cv-500 (RHK/JMM), 2001 WL 821952, at *2 (D. Minn. July 17, 2001) ("Minnesota does not recognize constructive discharge as an independent common law claim.").   "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004).

Other problems arise if the Complaint's constructive-discharge allegations were intended to show prohibited action for purposes of Mr. Fuller's Minnesota Whistleblower Act claim.   The Minnesota Supreme Court has "described constructive discharge as requiring: (1) objectively intolerable working conditions that are (2) created by the employer with the intention of forcing the employee to quit." *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 884–85 (Minn. 2023) (citing *Navarre v. S. Wash. Cnty. Schs.*, 652 N.W.2d 9, 32 (Minn. 2002)).   The Complaint alleges that Mr. Fuller received a negative performance review, was placed on a performance-improvement plan, was investigated for contacting a vendor, lost "controlled data" access, and was placed on administrative leave as part of an investigation into Mr. Fuller's transfer of Honeywell data to a personal device.   Compl. ¶¶ 10–16.   The performance-directed actions the Complaint alleges don't ordinarily show intolerable working conditions. *See Fischer v. Andersen*

8

*Corp.*, 483 F.3d 553, 557 (8th Cir. 2007) ("An employee is not constructively discharged when an employer merely implements a PIP."); *see also Singletary v. Mo. Dept. of Corr.*, 423 F.3d 886, 891–92 (8th Cir. 2005) (rejecting claim that administrative leave not resulting in loss of wages or benefits was an adverse employment action). Regardless, as discussed above, the Minnesota Whistleblower Act describes numerous prohibited actions short of constructive discharge. Minn. Stat. §§ 181.931, subdiv. 5, 181.932, subdiv. 1. In other words, the Complaint does not need to show that Mr. Fuller was constructively discharged to plausibly allege Honeywell took prohibited action.

\*

There is a question whether the Complaint should be dismissed with or without prejudice. Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *See Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at \*16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at \*5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at \*5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Here, the Complaint falls in the latter category. Mr. Fuller has identified information suggesting it is conceivable he might be able to replead the Minnesota Whistleblower Act claim with success. *See* ECF Nos. 14, 14-1. And he requested the chance to amend. *See* ECF No. 13 at 2, 10. Mr. Fuller will therefore be given the opportunity to file an amended pleading in which he may attempt to cure the dismissal-worthy problems identified here. If Mr. Fuller opts not to file an amended pleading by the prescribed deadline, the original Complaint will be dismissed with prejudice, and final judgment will be entered.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Defendant Honeywell International, Inc.'s Motion to Dismiss [ECF No. 7] is **GRANTED**.

2.      The Complaint [ECF No. 1-1] is **DISMISSED without prejudice**.

3.      On or before August 16, 2024, Plaintiff Christopher C. Fuller may file an amended complaint. If no amended complaint is filed by that deadline, judgment will be entered dismissing the Complaint with prejudice, and final judgment will be entered.

Dated: July 29, 2024                         s/ Eric C. Tostrud
                                             Eric C. Tostrud
                                             United States District Court

10